## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| SVV TECHNOLOGY INNOVATIONS INC. | § § § | |
| Plaintiff, | § § | Case No. 6:25-cv-00025-ADA |
| v. | § § | Case No. 6:25-cv-00026-OLG |
| ASUSTEK COMPUTER INC., | § § | Case No. 6:25-cv-00027-OLG |
| | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § § | |

## DEFENDANT ASUSTEK COMPUTER INC.'S
## MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND...................................................................................1

   A.   PLAINTIFF SVV'S THREE CASES AGAINST DEFENDANT ASUSTeK IN THE WDTX ...........1

   B.   SVV AND ITS RELEVANT PERSONNEL AND DOCUMENTS ARE IN CALIFORNIA.....................2

   C.   ASUSTeK IS LOCATED IN TAIWAN AND HAS A U.S. SUBSIDIARY IN THE NDCA................2

   D.   THE ACCUSED PRODUCTS.................................................................................................3

III.    LEGAL STANDARDS............................................................................................4

IV.     ARGUMENT ...........................................................................................................5

   A.   THIS ACTION COULD HAVE BEEN BROUGHT IN THE NDCA ................................................5

   B.   THE PRIVATE AND PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF TRANSFER.................8

      1.  All Private Interest Factors Heavily Favor Transfer to the NDCA ............................9

         a.  Costs of Attendance and Convenience for Willing Witnesses ……………..…………….9

         b.  Relative Ease of Access to Sources of Proof ……………………………………………12

         c.  The Availability of Compulsory Process ……………………………………….………15

         d.  All Other Practical Problems that Make Trial of a Case Easy, Expeditious and
             Inexpensive …………………………………………..………………………………17

      2.  The Public-Interest Factors Favor Transfer or Are Neutral ............................................. 18

         a.  Local Interests ……………………………………………………………..……18

         b.  Administrative Difficulties …………………………………………………………19

         c.  The Remaining Public Interest Factors are Neutral …………………………………20

V.      CONCLUSION........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 64 (2013) ..................................................9

*Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017)............8

*Beijing Meishe Network Tech. Co., Ltd. v. Tiktok Inc.*, No. 21-cv-504-ADA, 2023 WL 2903978
    (W.D. Tex. Apr. 11, 2023) ............................................................................................................7

*Eight One Two, LLC v. Purdue Pharma L.P.*, No. 3:13-CV-2981-K, 2014 WL 7740476 (N.D. Tex.
    May 16, 2014)..............................................................................................................................14

*Endo Pharms. Inc. v. Lupin Atlantis Holdings SA*, No. 2:17-CV-00558-JRG, 2018 WL 11474182
    (E.D. Tex. May 30, 2018)............................................................................................................15

*Entropic Commc'ns, LLC v. DIRECTV, LLC*, No. 2:22-CV-00075-JRG, 2022 WL 19076758 (E.D.
    Tex. Oct. 24, 2022)......................................................................................................................12

*Farmobile LLC v. Farmers Edge Inc.,* No. 2:21-CV-00411-JRG, 2022 WL 2653893 (E.D. Tex.
    July 7, 2022)................................................................................................................................19

*Gentex Corporation v. Meta Platforms, Inc.*, 2022 WL 2654986 (W.D. Tex. 2022) ...................11

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)............................................................................17

*In re Adobe Inc.*, 823 F. App'x 929 (Fed. Cir. 2020) ....................................................................19

*In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) ………………………………….………16

*In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020) ...................................................................12, 15

*In re Atlassian Corp.*, No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 15, 2021) ...................20

*In re EMC Corp.*, 501 F. App'x 973 (Fed. Cir. 2013)...................................................................18

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ...........................................................9, 12

*In re Google LLC*, 58 F.4th 1379 (Fed. Cir. 2023).........................................................................8

*In re Google LLC*, No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ................10, 12

*In re Google LLC*, No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021).........................14

*In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009)..................................................19

*In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *3 (Fed. Cir. Jan. 26, 2024)......18

*In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018) …………15

*In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).........................................................................5

*In re Juniper Networks, Inc.*, 14 F.4th 1313 (Fed. Cir. 2021)............................................9, 18, 19

ii

*In re Nintendo*, 589 F.3d 1194 (Fed. Cir. 2009)...............................................................10

*In re Nitro Fluids L.L.C.*, 978 F.3d 1308 (Fed. Cir. 2020)............................................19

*In re Planned Parenthood Fed. of Am., Inc.*, 52 F.4th 625 (5th Cir. 2022) ....................8

*In re Quest Diagnostics Inc.*, No. 2021-193, 2021 WL 5230757 (Fed. Cir. Nov. 10, 2021)........11

*In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) ..........................................................14

*In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) ............................18

*In re TikTok*, 85 F.4th 352 (5th Cir. 2023) ……………………………………………………………10

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008).......................................5, 20

*In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559 (Fed. Cir. 2011)...........................5

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004)......................................................4, 8

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008).........................5, 8, 17, 19

*In re: NetScout Sys., Inc.*, 2021 WL 4771756, at *3 (Fed. Cir. Oct. 13, 2021)............................11

*Mylan Institutional LLC v. Aurobindo Pharma Ltd*, 2016 WL 9245112, at *3 (E.D. Tex., 2016)...17

*Open Text Corp. v. Alfresco Software, Ltd.*, No. 6:20-CV-00920-ADA, Dkt. 152 at 7 (W.D. Tex. Nov. 22, 2021) ………………………………………………………………………..……..16

*ParkerVision, Inc. v. Intel Corp.*, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ..........................17

*Triller, Inc. v. ByteDance, Ltd.*, 2021 WL 3913589, at *3 (W.D.Tex. July 9, 2021).....................7

**Statutes**

28 U.S.C. § 1391 ..............................................................................................................5

28 U.S.C. § 1404 .................................................................................................1, 2, 4, 5, 8, 9

## I.    INTRODUCTION

Defendant ASUSTeK Computer Inc. ("ASUSTeK") moves to transfer this case to the Northern District of California ("NDCA"), where all U.S.-based witnesses, evidence, and relevant parties—including plaintiff SVV Technology Innovations Inc. ("SVV") and ASUSTeK's subsidiary ASUS Computer International ("ACI")—are located, making NDCA clearly more convenient than the Western District of Texas ("WDTX"), which lacks any meaningful connection to this dispute. SVV, a California corporation with no presence in WDTX, filed three simultaneous lawsuits[1] against ASUSTeK, a Taiwanese entity, alleging patent infringement by products imported and sold by ACI, a California-based subsidiary headquartered in NDCA. Transfer to NDCA under 28 U.S.C. § 1404(a) is warranted for the convenience of parties and witnesses and in the interest of justice.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff SVV's Three Cases Against Defendant ASUSTeK in the WDTX

Plaintiff SVV filed three separate lawsuits against ASUSTeK in the WDTX in which SVV claimed that ASUSTeK infringed a total of 18 patents by allegedly making, importing, offering to sell, selling, and/or having sold in the United States numerous identified products ("Accused Products"). *See, e.g.,* Dkt. No. 23, ¶¶87-95, 97-103, 105-109, 111-116, 118-122, & 124-129.[2] Dr. Sergiy Vasylyev is the sole inventor and applicant listed on the Asserted Patents.[3] *See* -0025 Case,

---

[1] *See* Civil Case Nos. 6:25-cv-00025-JKP ("-0025 Case"), Dkt. 23, 6:25-cv-00026-OLG, Dkt. 20; 6:25-cv-00027-OLG, Dkt. 1. ASUSTeK is filing identical transfer motions and supporting documents in each of these cases.

[2] The Complaints in each case are similar and, therefore, this motion will only cite to allegations from the -0025 Case.  SVV also sued ASUSTeK in Case No. 6:22-cv-00311 ("2022 Case").

[3] The "Asserted Patents" in each case are as follows: (1) Case 6:25-cv-00025: U.S. Patent Nos. 8,740,397, 10,439,089, 10,838,135, 11,616,157, 11,194,085, 11,846,794; (2) Case 6:25-cv-00026: U.S. Patent Nos. 9,880,342, 10,962,197, 11,156,340, 11,550,093, 11,923,475, RE49630; and (3) Case 6:25-cv-00027: U.S. Patent Nos. 10,439,088, 10,613,306, 10,627,562, 11,402,562, 11,821,621, 12,159,951.

Dkt. 23 at 1. SVV generally contends that each of the Asserted Patents relates to LED-backlit LCD display panels, which SVV alleges is incorporated into each of the Accused Products. *See generally* -0025 Case, Dkt. 23, ¶¶80-86.

### B.     SVV and Its Relevant Personnel and Documents are in California

Plaintiff SVV has no presence in the WDTX. Instead, SVV is a California corporation with its current principal place of business in Sacramento, California. -0025 Case, Dkt. No. 23, ¶2; Declaration of Mark C. Lang ("*Lang Decl.*"), ¶¶3-4; Ex. 1. SVV was founded by Dr. Vasylyev in Sacramento on or around July 6, 2000, and purportedly is engaged in the business of research and development. -0025 Case, Dkt. No. 23, ¶¶62-64; *Lang Decl.*, ¶¶3-4; Exs. 1-2. Since its inception, Dr. Vasylyev has served as SVV's sole officer and director, including as the company's Chief Executive Officer and Chief Financial Officer. *Lang Decl.*, ¶¶3-4; Exs. 1-2. Dr. Vasylyev currently resides in Elk Grove, California. *Id.*; Ex. 1. Dr. Vasylyev appears to have lived in the same area throughout the application and prosecution of each of the Asserted Patents. *Id.*, ¶¶3-4; Exs. 1-2. SVV has a lab in Sacramento where Dr. Vasylyev performs tear downs and captures data relating to products SVV accuses of infringement, including ASUSTeK products. Ex. 21, 2022 Case Trial Tr. at 20:1-3, 137:11-21, 269:23-270:8. SVV's decision to file in WDTX, despite its California base and lack of Texas operations, suggests forum-shopping, which carries no weight in the § 1404(a) analysis.

### C.     ASUSTeK Is Located in Taiwan and Has a U.S. Subsidiary in the NDCA

ASUSTeK also has no presence in the WDTX. ASUSTeK is a Taiwanese corporation with its principal place of business in Taipei, Taiwan. Dkt. 23, ¶2; Declaration of Barbara Chen ("*Chen Decl.*"), ¶¶3, 6. ASUSTeK's business primarily focuses on the design and development of consumer electronics products. *Chen Decl.*, ¶4. All ASUSTeK's employees with relevant

information about this case and the accused products, including communications between the parties, reside in Taiwan, and ASUSTeK has no employees in the United States. *Id.*, ¶7. ASUSTeK also does not have any place of business, equipment, property or operations in Texas, nor is it registered, authorized, or licensed to do business in Texas. *Id.*, ¶¶6, 8. *Id.* ASUSTeK also does not store or maintain documents in Texas. *Id.*, ¶6.

Non-party ACI is a California corporation and a wholly-owned subsidiary of ASUSTeK with its principal place of business in Fremont, California, which is in the NDCA. Declaration of Jaime Morquecho ("*Morquecho Decl.*"), ¶4; *Chen Decl.*, ¶5. ACI is the entity that imports, offers for sale, sells, distributes, supports, and fulfills orders for ASUSTeK products sold in the United States under the "ASUS" brand, including the Accused Products. *Id.*, ¶¶ 2, 5; *Chen Decl.*, ¶5. ACI does not have any offices, assets, property, or corporate records in Texas. *Id.*, ¶8. ACI stores and maintains all its records and documents for the Accused Products in Fremont, California. *Id.*, ¶ 6. Moreover, ACI's employees most knowledgeable about the Accused Products reside in the NDCA. *Id.*, ¶ 7.  ACI does currently have 11 employees that reside and work remotely in Texas. *Id.*, ¶9. These employees are not knowledgeable about the design or operation of the Accused Products. *Id.* Instead, these employees are generally involved with the sale or supply chain of ASUS-branded products throughout the United States, but they have no knowledge specific to this case. *Id.* ASUSTeK's nationwide sales through retailers like Best Buy or Amazon, as alleged by SVV, do not establish a specific connection to WDTX, as such activities occur uniformly across the U.S. and are managed by ACI in NDCA.

### D.     The Accused Products

Plaintiff's Complaint identified the monitors PG32UQXR, XG259QN, XG259Q3A, VG277QY1A, VG24VQ1BY, VP279Q-P, XG27ACS, MB16QHG, and MB16ACV as the

Accused Products. *See, e.g.,* -0025 Case, Dkt. No. 23, ¶¶87-90. Plaintiff alleges that Defendant infringes, directly and through subsidiaries (i.e., ACI) by, among other activities, selling, offering to sell, and using the Accused Products and by encouraging and instructing customers to use the Accused Products in an infringing manner. *See id.*, ¶¶93-94, 99-100, 107-108, 113-114, 120-121, 126-127. The Accused Products, monitors with LED-backlit LCD displays, are imported, marketed, and sold in the U.S. by ACI from its NDCA headquarters, where relevant documents and witnesses are located. *See Morquecho Decl.*, ¶¶ 4-7. ASUSTek employees knowledgeable about the Accused Products are in Taiwan. *Chen Decl.*, ¶¶4-7. Below, ASUSTeK identifies individuals based in Taiwan and California (but none in Texas) knowledgeable about the design, operation, importation, marketing, distribution, and sale of the Accused Products.

## III.    LEGAL STANDARDS

The Court may transfer an action to any district if that transfer serves "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). The threshold determination is whether the claims could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I"). If so, the Court must then evaluate the following private and public interest factors:

"The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.' The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *In re Volkswagen*

4

*of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If the proposed transferee forum is "clearly more convenient" based on these factors, then "the district court should … grant the transfer." *Id.* "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citing *Volkswagen II*, 545 F.3d at 314 n.10). In assessing a motion to transfer, the Court considers any venue-related evidence. *See In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011).

## IV.    ARGUMENT

### A.    This Action Could Have Been Brought in the NDCA

The first part of assessing whether to transfer pursuant to Section 1404(a) is to consider whether this case could have been brought in the transferee forum. 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . ."). A suit for patent infringement against a foreign defendant, who is not a resident of the United States, may be brought in any judicial district. 28 U.S.C. § 1391(c)(3) ("[A] defendant not resident in the United States may be sued in any juridical district[.]"); *see In re HTC Corp.*, 889 F.3d 1349, 1360-61 (Fed. Cir. 2018) (finding that venue for foreign defendants applied § 1391(c)(3) in patent cases). The decision to transfer under 28 U.S.C. §1404(a) is governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) The Fifth Circuit instructs the "preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *Volkswagen II*, 545 F.3d at 312.

ASUSTeK is a foreign company for which venue is proper in any judicial district. *See* 28 U.S.C. § 1391(c)(3); -0025 Case, Dkt. 23, ¶12. Employees of ASUSTeK that were involved with

the development or knowledgeable about the Accused Products or ASUSTeK's business work in Taiwan. *Chen Decl.*, ¶¶4-7. ACI, the subsidiary of ASUSTeK, had about 280 total employees working and residing in the NDCA when SVV filed this case. *Morquecho Decl*., ¶4. ACI is headquartered in NDCA and imports, sells, distributes, and supports the Accused Products throughout the United States, including in the NDCA. *Id*., ¶¶4-5.

In addition, Plaintiff generally alleges infringement based on nationwide activities of ASUSTeK, its subsidiaries, customers and consumers that use, sell and/or import the Accused Products.[4] -0025 Case, Dkt. 23, ¶¶7-9, 12, 16-17, 61, 94-95. ASUSTeK would be subject to personal jurisdiction in the NDCA for the same reasons SVV alleges that ASUSTeK is subject to personal jurisdiction in the WDTX. For example, SVV alleges that "ASUSTeK has placed or contributed to placing infringing products into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States." *Id.*, ¶7. SVV additionally alleges that ASUSTeK "directly infringes through its direct involvement in the activities of its distributors or subsidiaries," including the selling and importing of the Accused Products in the United States, and commits infringing acts through its subsidiaries, i.e., ACI, including by "plac[ing] infringing products into the stream of commerce … through online retailers such as Best Buy, Walmart, and Amazon." *Id*., ¶¶94, 14-15; *see also id*., ¶¶8 ("[ASUSTeK] directly and/or through subsidiaries … has committed … acts of infringement … by … selling products and/or services that infringe …."), 61, 94-95. Finally, SVV alleges that "ASUSTeK sells their products in the United States through their website" (*id.,* Dkt. 23, ¶18; *see*

---

[4] In the prior case, SVV alleged "ASUSTek has placed or contributed to placing infringing products into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used *in the United States*, including in the Western District of Texas." Case No. 6:22-cv-00311, Dkt. 1, ¶ 6.

*also id.*, ¶¶19-39), which would be accessible to all residents of the United States, not just those in this District.

If these allegations are sufficient for personal jurisdiction in this District, they are equally sufficient to establish personal jurisdiction in NDCA, where ACI is located and from where it imports, offers for sale and sells the Accused Products. *See Chen Decl.*, ¶5; *Morquecho Decl.*, ¶¶2-5; *see also Beijing Meishe Network Tech. Co., Ltd. v. Tiktok Inc.*, No. 21-cv-504-ADA, 2023 WL 2903978, at *3 (W.D. Tex. Apr. 11, 2023) ("[Because nationwide] allegations were sufficient to hail those defendants into this court, they should be sufficient to hail those defendants into N.D. Cal."); *see also* Ex. 22 (*Resonant Systems Inc. v. Sony Group Corp., et al.*, C.A. No. 2:22-cv-424-JRG, Dkt. 55) at 4 ("The Court agrees with Defendants that this case could have been brought in the NDCA .... As to personal jurisdiction, SGC's two wholly owned subsidiaries, SIE in NDCA and SIEI in Japan, work together to develop the Accused Products and sell them in the NDCA. Indeed, SIE purchases the Accused Products from SIEI and sells them in the NDCA. That activity gives rise to the cause of action in this lawsuit. Accordingly, the Court finds that this threshold question is satisfied and turns next to the question of convenience.").

Alternatively, since SVV's claims all arise under federal law, personal jurisdiction over ASUSTeK could also be established in the NDCA under Federal Rule of Civil Procedure 4(k)(2) by the mere act of filing and serving a summons upon ASUSTeK. Fed. R. Civ. P. 4(k)(2); *see also Triller, Inc. v. ByteDance, Ltd.*, 2021 WL 3913589, at *3 (W.D.Tex. July 9, 2021) ("Jurisdiction and venue are also appropriate in NDCA with regards to foreign Defendants BDL and TTPL." (citing Fed. R. Civ. P. 4(k)(2) and stating "jurisdiction over foreign defendants might have been established by [plaintiff] merely filing a summons in NDCA"). SVV expressly alleges that "the Court has personal jurisdiction over Defendant under Fed. R. Civ. P. 4(k)(2)." -0025 Case, Dkt. 23, ¶17. These same allegations support a finding of personal jurisdiction over ASUSTeK in the NDCA under Rule 4(k)(2)

which is based on ASUSTeK's contacts with the United States as a whole. *See* -0025 Case, Dkt. 23, ¶¶5-10; 13-16; *see also Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017) ("The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole.").

Accordingly, because this action could have been filed against ASUSTeK in the NDCA at least to the same extent that it could be filed in this District, the threshold test for transfer is satisfied.

**B.    The Private and Public Interest Factors Weigh in Favor of Transfer**

The second part of the Section 1404(a) calculus assesses "private" and "public" factors to determine whether they weigh clearly in favor of transfer. Those factors include:

| | |
|---|---|
| Private | the relative ease of access to sources of proof |
| | the availability of compulsory process to secure the attendance of witnesses |
| | the cost of attendance for willing witnesses |
| | all other practical problems that make trial of a case easy, expeditious and inexpensive |
| Public | the administrative difficulties flowing from court congestion |
| | the local interest in having localized interests decided at home |
| | the familiarity of the forum with the law that will govern the case |
| | the avoidance of unnecessary problems of conflict of laws or the application of foreign law |

*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). Ultimately, "[t]he United States Court of Appeals for the Fifth Circuit has made clear that while 'the decision of whether to transfer a case is committed to the district court's discretion,' when a movant 'demonstrates that the transferee venue is clearly more convenient' ***the district court 'should' grant transfer.***"[5] *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023) (quoting *In re Planned Parenthood Fed. of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022)). Weighing the "private" and "public" factors confirms the NDCA is "clearly more convenient" than the W.D. Tex. *Volkswagen II*, 545 F.3d at 315..

---

[5] All emphases in this motion are added by Defendants unless noted otherwise.

Here, the balance of the public and private interest factors favor transfer of this case to the NDCA. Neither SVV nor ASUSTeK has a presence in Texas. Moreover, most relevant witnesses, documents and non-parties in the United States are in or within the subpoena power of the NDCA. And although the "public-interest factors … rarely defeat a transfer motion," those factors support transfer or are neutral. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 64 (2013).

1.    **All Private Interest Factors Heavily Favor Transfer to the NDCA**

a.    *Costs of Attendance and Convenience for Willing Witnesses*

"[T]he relative convenience for and cost of attendance of witnesses between the two forums is 'probably the single most important factor in transfer analysis.'" *In re Juniper Networks, Inc*., 14 F.4th 1313, 1318 (Fed. Cir. 2021 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)). Applying Fifth Circuit law, the Federal Circuit established the "100-mile" rule, such that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Genentech*, 566 F.3d at 1343 (alteration in original) (citation omitted). Consequently, the threshold question is whether the proposed venue and the current venue are more than 100 miles apart. *See Volkswagen II*, 545 F.3d at 317. If the distance is greater, then a court will consider the distances between the witnesses and the two proposed venues. *Id*. Here, the distance between the NDCA and the WDTX is more than 100 miles.

Based on ASUSTeK's investigation to date, no party witness, or other potential willing witness, resides in the WDTX. *See*, *e.g.*, Dkt. No. 23, ¶¶ 2-3; *Chen Decl.*, ¶7. Instead, all likely witnesses, if willing to attend a trial in WDTX, would be forced to endure significant

inconvenience by traveling from Taiwan. [6] *Chen Decl.*, ¶7. The NDCA includes Federal Courthouses closer to ACI's Fremont office and Defendant's Taiwan-based office than the WDTX.

Maintaining venue in the WDTX is inconvenient for Taiwan-based trial witnesses, which would require those witnesses to fly about 7,717 miles (about 16 hours 10 minutes) from Taipei to Dallas/Fort Worth International and then commute an additional 115 miles (about 2 hours[7]) from Dallas/Fort Worth to Waco (or 7,847 miles from Taipei to San Antonio (about 17 hours)). *Lang Decl.*, ¶¶6-10; Exs. 3-5. In contrast, those same witnesses would only have to travel about 6,469 miles (about 11.5 hours) to San Francisco and would only require an additional 13.7-mile (about 30 minutes) drive to the San Francisco Courthouse. *Id.*, ¶¶11-13; Exs. 6-8. Moreover, Taiwan-based witnesses would also have the convenience of continuing to do their work from ACI's office in NDCA. *Morquecho Decl.*, ¶¶4, 8. The convenience of NDCA relative to WDTX for these Taiwan-based witnesses must be considered. *See In re TikTok*, 85 F.4th 352 (5th Cir. 2023) (finding where "the bulk of relevant witnesses [are] in China, it is indisputable that the [NDCA] a is clearly more convenient for these witnesses than the [WDTX]" and that the district court "committed a clear abuse of discretion in concluding otherwise"); *In re Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009).

Further, witnesses employed by ACI that work in Fremont would only commute about 43.8 miles (about 53 minutes) to the NDCA courthouse, compared to about 1,464 miles (about 3.5

---

[6] In the prior case involving the parties, Mr. James Lee appeared in person from Taiwan as ASUSTeK's corporate representative. *See* Ex. 21, 2022 Case Trial Tr. at 534:11-13, 535:9-10.

[7] Where, as here, a significant drive is required from the airport to the courthouse, "time is a more important metric than distance." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). The significant reduction in road travel distance achieved through transfer to NDCA for all witnesses further reduces travel time when compared to the distance to Waco or San Antonio from the most convenient airport.

hours) of flight and then commute an additional 115 miles (about 2 hours) from Dallas/Fort Worth to Waco (or 1,482 miles and 3.5 hours from San Francisco to San Antonio). *Lang Decl*., ¶¶10, 14-18; Exs. 5, 9-11.1; *see also In re: NetScout Sys., Inc.*, 2021 WL 4771756, at *3 (Fed. Cir. Oct. 13, 2021) (noting that the convenience factor is "not … applicable only to non-party witnesses" and "the fact that witnesses are affiliated with a party 'does not negate the inconvenience and cost to those individuals to travel a significant distance to testify.'"); *In re Quest Diagnostics Inc.*, 2021 WL 5230757, at *2 (Fed. Cir. Nov. 10, 2021) (noting that "[t]here is no major airport in the Waco Division of the Western District of Texas").

In sum, ASUSTeK witnesses from Taiwan would save roughly 12 hours in roundtrip travel time and ACI witnesses from the Fremont area would save roughly 9 hours in roundtrip travel time if this case is transferred to NDCA. *Lang Decl*., ¶¶6-18; Ex. 3-11.1.

Adjudicating this case in the NDCA would also ease the burden on SVV compared to the WDTX. SVV is in Sacramento, California, and its sole officer, Dr. Vasylyev, who will be a crucial witness in this case, resides in Elk Grove, California. *See* Dkt. 23, ¶2; *Lang Decl*., ¶¶3-4; Exs. 1-2. Dr. Vasylyev is also the sole inventor of the Asserted Patents, as well as the person who applied for and prosecuted each of the applications leading to the Asserted Patents. *See* -0025 Case, Dkt. 23, ¶63; Ex. 21, 2022 Case Trial Tr. at 99:6-22 . Although SVV may claim Dr. Vasylyev is willing to travel to WDTX, it is without dispute that the NDCA is a more convenient forum for him to travel to than the WDTX as Northern California is where he resides and works and is less than 100 miles from, for example, the San Francisco Division of the NDCA. *Lang Decl*., ¶¶ 10, 19-24; Exs. 12-15.1. Accordingly, this factor strongly favors transfer. *See e.g.*, *Gentex Corporation v. Meta Platforms, Inc.*, 2022 WL 2654986, at *7 (W.D. Tex. 2022) ("Eric Foxlin is the named inventor on all Asserted Patents and is located in San Mateo County, California. [citation omitted]. Mr.

11

Foxlin signed a declaration stating that he is willing to travel to WDTX. [citation omitted]. ***He will find travel to the N.D. Cal. more convenient***."); *In re Google LLC*, 2021-170 2021 WL 4427899, at *4-5. ("Our cases have emphasized that when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."); *Genentech*, 566 F.3d at 1338, 1345.

Accordingly, all likely willing witnesses will find trial in the NDCA more convenient.

*b.*    *Relative Ease of Access to Sources of Proof*

Access to the relevant sources of proof would be made easier by transferring this case to the NDCA. This is not surprising, given that neither SVV, the inventor, nor Defendant has any connection to this District. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Upon the movant's showing that transfer will result in more convenient access to sources of proof, this factor weighs in favor of transfer. *Entropic Commc'ns, LLC v. DIRECTV, LLC*, No. 2:22-CV-00075-JRG, 2022 WL 19076758, at *5 (E.D. Tex. Oct. 24, 2022).

The "relative ease of access to sources of proof" factor also weighs strongly in favor of transfer. Non-party ACI is the entity which imports, offers for sale and sells the Accused Products in the United States. *See Morquecho Decl.*, ¶¶ 2-5; *Chen Decl.*, ¶¶2, 5. ACI stores its corporate records in the NDCA, so any relevant documents relating to the importation, offer for sale, and sale of the Accused Products in the United States in ACI's possession would be in the transferee venue. *See Morquecho Decl.*, ¶¶6-7; *see also* Fed. R. Civ. P. 45(c)(2).

All hard copies and electronic documents that are likely to serve as sources of proof and

12

relate to SVV's claims are stored at or accessible in the ordinary course of business at ACI's headquarters in the NDCA. *Morquecho Decl.*, ¶¶6-8. This is a natural consequence of the fact that ACI is the distributor, marketer, and seller of the Accused Products in the U.S. *Morquecho Decl.*, ¶¶4-6. Most of ACI's personnel who created and maintain this documentation are in NDCA (one is in Southern California). In addition, ACI's servers on which its information is stored are located in Fremont and Santa Clara, California, both of which are in NDCA. *Morquecho Decl.*, ¶¶4, 6. This includes the following 6 document custodians and likely party trial witnesses:

| | |
|---|---|
| Sharon Wou | ACI's Sr. Manager of Finance; Fremont HQ; Resides in Los Gatos, California; Duties include overseeing activities in ACI's Finance department and is familiar with the sale of Accused Products. |
| Tony Han | ACI's Director of Logistics; Fremont HQ; Resides in Milpitas, California; Duties include overseeing all activities in ACI's logistics department including the importation of Accused Products. |
| Donald Leung | ACI's Director of Sales; Fremont HQ; Resides in Fremont, California; Duties include overseeing ACI's Open Platform Business Group sales department and is familiar with the offer for sale and sale of Accused Products, including to Amazon and Walmart. |
| Diwaker Sambyal | ACI's Senior Director of Business Planning; Fremont HQ; Resides in Pleasanton, California; Duties include overseeing ACI's Best Buy business management and operations related to the sale of the Accused Products. |
| Gina Chien[8] | ACI's Sr. Product Manager, City of Industry Branch Office; Resides in Chino Hills, California; Duties include overseeing product management of ACI's Display product line and is familiar with the offer for sale and sale of Accused Products. |
| Jaime Morquecho | ACI's Senior Manager of Country Service, Fremont HQ; Resides in San Jose, California; knowledgeable of ACI's corporate structure, as well as business activities, records and employees related to the Accused Products. |

*See Morquecho Decl.*, ¶¶1, 3, 7.

ACI's sources of proof include documents reflecting United States revenue; sales activities; importation activities; and marketing strategies relating to the Accused Products. Because many

---

[8] Ms. Chien lives close to the Ontario (California) International Airport and would be similarly inconvenienced travel time to DFW (and drive to Waco) or San Antonio compared to San Francisco. *Lang Decl.*, ¶¶ 25-30; Exs. 16-20 (showing Ms. Chien would travel 800 miles and at least 2.5 hours less going to San Franciso compared to WDTX).

of these sources and their respective custodians who created, maintain, and access them are in the NDCA, and none are in the WDTX, this factor weighs heavily in favor of transfer. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) ("The district court erred by analyzing only the location of servers where documents are stored, rather than also considering the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval."); *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (finding "the question is relative ease of access, not absolute ease of access" and factor weighs in favor of transfer even if comparative convenience in transferee forum is slight); *Eight One Two, LLC v. Purdue Pharma L.P.*, No. 3:13-CV-2981-K, 2014 WL 7740476, at *2 (N.D. Tex. May 16, 2014) (noting where "the proof needed to adjudicate this case is ***more*** readily accessible" in the transferee district, that fact "favors transfer").

Defendants are not aware of any source of proof relating to the Accused Products located in WDTX. Dr. Vasylyev likely has in his possession documents and evidence regarding the development of his alleged inventions, prosecution of the Asserted Patents, and information about the state of the prior art. In addition, Dr. Vasylyev previously testified that he performed an analysis of ASUSTeK products at this lab in Sacramento, resulting in "a lot of data and evidence and product imaging." Ex. 21, 2022 Case Trial Tr. at 137:11-21; *see also id*. at 270:3-8 (SVV's technical expert testifying that he visited the lab to examine teardowns and data). Thus, SVV's Sacramento lab, where Dr. Vasylyev conducts product teardowns and data analysis, contains relevant physical evidence within NDCA's 100-mile subpoena power, unlike WDTX. *See Lang Decl*., ¶¶19-20; Ex. 12-13. Additionally, SVV likely maintains and stores all its relevant corporate records at its principal place of business in Sacramento. *Lang Decl*., ¶¶3-4; Exs. 1-2.

ASUSTeK's documentary evidence is in Taiwan and is neutral for purposes of this factor,

but their custodians' travel burden favors NDCA, as discussed above. *See Chen Decl.*, ¶¶ 6-7.

Indeed, ACI's presence in the NDCA is most relevant to the sources of proof factor. Compared with the absence of relevant third-party witnesses and sources of proof in the WDTX, these facts weigh heavily in favor of transfer under the sources of proof factor. *See In re Nintendo Co., Ltd*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) (finding the district court "erred in not weighing this factor heavily in favor of transfer" where all of defendant's research and development documents were in Japan, but U.S.-based affiliate's relevant documents are located in the transferee venue); *see also Endo Pharms. Inc. v. Lupin Atlantis Holdings SA*, No. 2:17-CV-00558-JRG, 2018 WL 11474182, at *4 (E.D. Tex. May 30, 2018) ("[T]he existence of some documents in the transferee district—when compared to the complete absence of documents or other relevant evidence in this District—tilts the scale in favor of transfer"); *Apple*, 979 F.3d at 1340 ("the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer.").

### c.    The Availability of Compulsory Process

Under this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses whose attendance may require a court order. *Volkswagen II*, 545 F.3d at 316. A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person[.]" FED. R. CIV. P. 45(C)(1)(A), (B)(ii). Under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). "This factor 'weigh[s] heavily in favor of transfer when more third-party witnesses reside within the

transferee venue than reside in the transferor venue.'" *Open Text Corp. v. Alfresco Software, Ltd.*, No. 6:20-CV-00920-ADA, Dkt. 152 at 7 (W.D. Tex. Nov. 22, 2021) (quoting *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Most of the non-party witnesses, i.e., ACI, relevant to this litigation located within the United States are in the NDCA or within its subpoena power. *See Chen Decl.*, ¶5; *Morquecho Decl.*, ¶¶2-5. ACI has indicated that it would not willingly make its employees available to travel to Texas for trial because of its disruption to ACI's day-to-day business operations. *Morquecho Decl.*, ¶¶7-8. While ASUSTeK's investigation into relevant witnesses is ongoing, ASUSTeK is aware of at least the following ACI witnesses most knowledgeable about ACI's business in connection with the importation, offer for sale, and/or sale of the Accused Products in the United States: (1) Kevin Kuo, ACI's Controller; (2) Tony Han, ACI's Director of Logistics; (3) Donald Leung, ACI's Director of Sales; (4) Diwaker Sambyal, ACI's Senior Director of Business Planning; (5) Gabriel Meng, ACI's Manager of Product Management; and (6) Jaime Morquecho, ACI's Senior Manager of Country Service. *Morquecho Decl.*, ¶7; *see* Section IV.B.1(b) *supra*. All these relevant witnesses reside near and work at ACI's headquarters and thus would all be within the NDCA subpoena power to compel witnesses to attend trial. *Morquecho Decl.*, ¶¶7-8; *see* Fed. R. Civ. P. 45(c)(1)(B). Conversely, none of these relevant ACI witnesses could be compelled to attend trial within the WDTX. Fed. R. Civ. P. 45(c)(1)(B).

Additionally, Dr. Vasylyev resides and regularly transacts business in Northern California. *Lang Decl.*, ¶¶3-4; Exs. 1-2. ASUSTeK would only be able to compel Dr. Vasylyev to personally attend the trial in this action if this case were to be transferred to NDCA. If this case remains in the WDTX, ASUSTeK would have no ability or power to compel Dr. Vasylyev's appearance at any trial. Accordingly, the compulsory process factor favors transfer. *See* Fed. R. Civ. P. 45(c)(1);

16

*see Volkswagen II*, 545 F.3d at 316-17 (when "a proper venue that does enjoy absolute subpoena power … is available," that fact favors transfer); *Mylan Institutional LLC v. Aurobindo Pharma Ltd*, 2016 WL 9245112, at *3 (E.D. Tex., 2016) ("A 'party or a party's officer' may be compelled to travel more than 100 miles to attend a trial, hearing, or deposition 'within the state where the person resides, is employed, or regularly transacts business in person.' Fed. R. Civ. P. 45(c)(1)(B)(i).").

    d.    *All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive.*

This factor concerns "practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Here, this factor favors transfer because, as discussed above, most witnesses and evidence in the United States are in NDCA. This case is also in its nascent stages, and this Court has yet to invest significant resources in the case.

At the time SVV filed the instant lawsuits against ASUSTeK, there were pending lawsuits against Acer in the WDTX involving the Asserted Patents. *See* Case Nos. 6:24:-cv-536, 6:24:-cv-538, and 6:24:-cv-539. However, these cases are assigned to a different judge than the ASUSTeK cases, which are assigned to Judge Pulliam and Judge Garcia. There are no efficiencies to be gained by having these cases tried in WDTX by two different judges compared to the NDCA where the cases will likely be assigned to the same judge. Moreover, even if these cases were before the same judge, "cases involving the same patents but different defendants, products, and witnesses will not necessarily be expedited by being in the same court." *ParkerVision, Inc. v. Intel Corp.*, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This is particularly true where the Acer case is

procedurally ahead of the ASUSTeK cases.[9]

Regardless, to the extent there are any efficiencies to be gained (there are not), "judicial economy considerations [do] not undermine the clear case for transfer in light of the imbalance on the other factors." *In re Google*, 58 F.4th at 1383; *see also In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (noting that having "the same judge handle multiple suits involving the same patents" should not "dominate the transfer inquiry"); *see also In re Samsung Elecs. Co., Ltd*., 2 F.4th 1371, 1380 (Fed. Cir. 2021) (noting that "the 'incremental gains' in judicial economy that might result from "keeping these cases in the Western District of Texas simply are not sufficient to justify overriding the inconvenience to the parties and the witnesses."); *In re Honeywell Int'l Inc*., No. 2023-152, 2024 WL 302397, at *3 (Fed. Cir. Jan. 26, 2024).

### 2.    The Public-Interest Factors Favor Transfer or Are Neutral

#### a.   Local Interests

The WDTX has no local interest in this dispute. Plaintiff conducts business out of Sacramento. Dkt No. 23, ¶ 2. ASUSTeK is headquartered in Taiwan. *Chen Decl.*, ¶¶2-4. ACI— ASUSTeK's subsidiary—is headquartered in the NDCA. *Morquecho Decl*., ¶4. The Federal Circuit has instructed that the "focus" of this factor is where "the events forming the basis for [the] infringement claims occurred[.]" *In re Juniper*, 14 F.4th at 1319. These activities for the Accused Products occurred outside the U.S. (manufacturing) and by ACI (importing, offering for sale, and/or selling) in NDCA. Indeed, SVV has alleged that ASUSTeK is liable for its subsidiary's (i.e., ACI) activities in the United States. *See, e.g.,* Dkt. 23, ¶¶8, 14-15, 61, 94-95. The U.S.-based witnesses and sources of proof, including those with access to them, are in the NDCA. This case

---

[9] The Acer case is scheduled for a *Markman* hearing on August 25, 2025. Case No. 6:24-cv-536, Dkt. 26.

undoubtedly calls into question the work of ACI, the company that markets, sells, and distributes the Accused Products in the U.S., and its employees in the NDCA. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

SVV's allegation that venue is proper in this District does not impart this District with a localized interest for purposes of the analysis under §1404(a). This is particularly true where SVV has no connection to this District, and there are no sources or proof or witnesses in WDTX. Additionally, SVV and Dr. Vasylyev are in Northern California, *See* Dkt. No. 23, ¶2; *Lang Decl*., ¶¶3-4; Exs. 1-2. The WDTX has no localized interest in this action as SVV does not have any presence in this District besides filing lawsuits. Furthermore, Accused Product sales occur nationwide and are managed by ACI in NDCA, rendering no particular local interest to the WDTX.

Accordingly, this factor favors transfer. *See In re Juniper Networks, Inc*., 14 F.4th at 1320-21; *see Volkswagen II*, 545 F.3d at 317–18 (holding that local interest factor weighed "heavily in favor of transfer" where "witnesses" and "evidence" are located in the transferee venue); *see Farmobile*, 2022 WL 2653893, at *6 ("[W]here a movant has a local interest in the transferee venue and no presence in the transferor venue, this factor favors transfer."). Indeed, Judge Albright previously found that this factor weighs slightly in favor of transfer in the prior case. Case No. 6:22-cv-311, Dkt. 42 at 22.

### b.   *Administrative Difficulties*

This factor looks to the relative docket congestion of the two venues and expected time to trial. *In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1312 (Fed. Cir. 2020); *see also In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The median time from filing to disposition of a civil case

at trial is approximately two months shorter in the NDCA than in the WDTX.[10] This factor therefore favors transfer, or at worst, is neutral. Furthermore, even if WDTX were faster, this factor does not outweigh the overwhelming convenience of NDCA. *In re Atlassian Corp.*, No. 2021-177, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021) ("when other relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh all of those other factors.'").

### c. The Remaining Public Interest Factors are Neutral.

The third and fourth public interest factors, "the familiarity of the forum with the law that will govern the case" and "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law[,]" are both neutral. *Volkswagen II*, 545 F.3d at 315. Both the WDTX and the NDCA are equally capable of applying U.S. patent laws, and there are no conflicts of law to avoid. *See TS Tech USA Corp.*, 551 F.3d at 1320.

## V. CONCLUSION

The NDCA is clearly more convenient than WDTX, as all U.S.-based witnesses, including SVV's Dr. Vasylyev and ACI's employees, are in or near NDCA, relevant evidence is in NDCA, and NDCA has a strong local interest in ACI's operations. WDTX lacks any connection to this case beyond SVV's strategic filing. ASUSTeK respectfully requests transfer to NDCA under 28 U.S.C. § 1404(a).

---

[10] *See* Ex. 20, U.S. District Courts – Median Time from Filing to Disposition of Civil Cases (Dec. 31, 2024) (available at: https://www.uscourts.gov/data-news/data-tables/2024/12/31/statistical-tables-federal-judiciary/c-5). The NDCA had a time to trial of 32.4 months, while the WDTX had a time to trial of 34.4 months.

Dated: June 10, 2025                    Respectfully submitted,

By: /s/ *Eric A. Buresh*
    Eric A. Buresh
    KS Bar No. 19895
    Eric.buresh@eriseip.com
    Michelle L. Marriott
    KS Bar No. 21784
    michelle.marriott@eriseip.com
    Chris R. Schmidt
    KS Bar No. 27833
    Chris.schmidt@eriseip.com
    Mark C. Lang
    KS Bar No. 26185
    mark.lang@eriseip.com
    ERISE IP, P.A.
    7015 College Blvd., Suite 700
    Overland Park, Kansas 66211
    Telephone: (913) 777-5600
    Facsimile: (913) 777-5601

    ***Attorneys for ASUSTeK Computer Inc.***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on June 10, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system and by email.

/s/ *Eric A. Buresh*
Eric A. Buresh

**<u>CERTIFICATE OF CONFERENCE</u>**

Pursuant to the Court's Rule CV-7(G), ASUSTeK met and conferred with SVV on June 4, 2025 in a good-faith attempt to resolve the matter by agreement. SVV indicated it will oppose this motion.

/s/ *Eric A. Buresh*
Eric A. Buresh
